233 N.J. Super. 29 (1989)
557 A.2d 1386
JEANETTE BLITZ, PLAINTIFF-APPELLANT,
v.
970 REALTY ASSOCIATES, A NEW YORK PARTNERSHIP, AND STUART EISENBERGER, DEFENDANTS-THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
PUROLATOR PRODUCTS, INC., PUROLATOR COURIER CORPORATION, EMERY AIR FREIGHT CORP., AND FACET ENTERPRISES, THIRD PARTY DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 1989.
Decided May 4, 1989.
*30 Before Judges MICHELS and LONG.
Leo Kaplowitz argued the cause for appellant (Kaplowitz and Wise, attorneys; Leo Kaplowitz, of counsel and on the brief; Warren L. Fink, on the brief; Greenstone, Sokol, Behot & Fiorenzo, attorneys).
Beth D. Pollack argued the cause for respondents (Porzio, Bromberg & Newman, attorneys; John M. Newman, on the brief).
The opinion of the Court was delivered by LONG, J.A.D.
On July 26, 1987, plaintiff Jeanette Blitz (Blitz) entered into an agreement of sale with defendant 970 Realty Associates (970 Realty) pursuant to which Blitz agreed to purchase from 970 Realty a parcel of property located in the City of Rahway, consisting of approximately twelve acres of land and containing approximately 295,000 square feet of buildings zoned for industrial, commercial and office purposes. Upon entering into the agreement, Blitz tendered a deposit of $650,000. The closing which was scheduled for August 31, 1987, was postponed until September 29, 1987.
On September 22, 1987, Blitz filed a complaint against 970 Realty and defendant Stuart Eisenberger (Eisenberger), a partner at 970 Realty (collectively defendants), alleging that there was widespread environmental contamination of the property (which had previously housed Purolator Products, Inc.) and that Eisenberger fraudulently induced Blitz to enter into the agreement to purchase the property. The complaint charged that Eisenberger told Blitz, who was only "vaguely aware" of the Environmental Cleanup Responsibility Act, N.J.S.A. 13:1K-6 et seq. (ECRA), that the property was generally ECRA clean and that the cost of the cleanup for the "one or two places of pollution or contamination" would be covered by a $200,000 letter of credit that had been posted in response to an administrative *31 consent order entered into with the Department of Environmental Protection in February 1985. On the basis of these allegations, Blitz sought a number of different remedies including a restraint on the sale of the property pending a determination of its environmental status; a postponement of the closing; the posting of security by Eisenberger to cover cleanup; rescission; return of Blitz' deposit; and damages, both punitive and compensatory.
During the course of discovery, defendants claimed that Blitz had consulted with various attorneys with regard to ECRA and the advisability of entering into the agreement to purchase the property. Blitz denied that she had consulted with any attorney other than Leo Kaplowitz, her present attorney, prior to signing the agreement. In any event, there was a factual issue presented as to whether plaintiff sought and received counsel from any other attorney in connection with the environmental issue prior to the signing. On June 24, 1988, defendants filed a notice of motion whereby they sought to compel Blitz to waive the attorney-client privilege "with respect to communications between herself and attorneys regarding ECRA or the advisibility of entering into the subject transaction," or alternatively to dismiss the fraud allegations of plaintiff's complaint. The trial judge granted defendants' motion to waive plaintiff's attorney-client privilege. He stated:
Furthermore, communications which the defendant requests in my judgment are relevant to the matter. What communications or knowledge did the plaintiff have at the time she contends she relied solely on defendant's statements? Also, this information should be obtained from the plaintiff, the attorney involved. To do otherwise would raise questions of hearsay.
Based on all of the foregoing I will grant the motion of defendant and permit the attorney-client privilege to be deemed waived, and I will order the depositions be taken of those individuals which are the subject of this motion.
Defendants submitted a proposed order which contained the following language:
HEREBY ORDERED that the plaintiff, Jeanette Blitz, her agents and representatives, are hereby deemed to have waived the attorney/client privilege with respect to all communications and conversations of every kind between the plaintiff, Jeanette Blitz, her agents and attorneys, and all attorneys concerning ECRA ("Environmental Clean-up Responsibility Act") or other environmental *32 matters relating to any real property in the state of New Jersey or with respect to the advisability or lack thereof of entering into or concluding the real property transaction commonly referred to as the Purolator Property in Rahway, New Jersey.
Blitz objected to the scope of the proposed waiver order. Specifically, Blitz claimed that the order was "overbroad in that it [went] ... beyond the signing of the Agreement and [spoke] of concluding the transaction." Defendants argued that the order had to encompass Blitz' communications with her counsel following the signing of the agreement of sale on July 26, 1987 because these communications could show the extent of plaintiff's "prior knowledge of ECRA expecially as it existed at or prior to signing" the agreement of sale.
On September 16, 1988, a second hearing was held before the trial judge. The purpose of this hearing was to address Blitz' objection to the form of the order as submitted by defendants' attorney on the issue of the attorney-client privilege. At the conclusion of this hearing, the judge ruled that the order waiving Blitz' attorney-client privilege would encompass not only communications made prior to the agreement but also communications made after the agreement was signed but prior to the institution of the suit. The trial judge noted, however, that the order would not encompass "work product" or communications with respect to "trial strategy."
Blitz appeals claiming that:
THE ORDER OF THE COURT IN WAIVING THE ATTORNEY/CLIENT PRIVILEGE WENT FAR BEYOND THE RELIEF ASKED FOR IN THE NOTICE OF MOTION AND DEMONSTRATES CLEAR ERROR IN THAT THE WAIVER EXTENDED BEYOND THE DATE OF THE INDUCEMENT OF THE FRAUD WHICH OCCURRED WHEN THE PARTIES SIGNED THE AGREEMENT ON JULY 26, 1987.
A. The scope of the waiver constitutes clear error and is without a basis in law.
B. The manner in which the defendants seduced the trial court into extending the waiver of the attorney/client privilege beyond the date of the inducement of the fraud, which was the signing of the Agreement on July 26, 1987, and to include the time period up to the filing of the Verified Complaint on September 22, 1987, mocks the concept of justice.
We have carefully reviewed this record in light of the claims advanced and have determined that the trial judge erred in *33 extending the waiver beyond the date of the signing of the agreement.
"The attorney-client privilege, which is the oldest of the privileges for confidential communications, is firmly embedded in our common law." Macey v. Rollins Environmental Services (N.J.), 179 N.J. Super. 535, 538 (App.Div. 1981); see Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 684, 66 L.Ed.2d 584, 591 (1981); Fellerman v. Bradley, 99 N.J. 493, 498 (1985); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App.Div. 1984). Although the privilege was not originally set forth in either constitutional or statutory form it is presently codified in N.J.S.A. 2A:84A-20 and embodied in Evid. R. 26. See Fellerman, supra, 99 N.J. at 498; United Jersey Bank, supra, 196 N.J. Super. at 561; Macey, supra, 179 N.J. Super. at 538-539.
"The privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to `encourage full and frank communication between attorneys and their clients.'" United Jersey Bank, supra, 196 N.J. Super. at 561 (quoting Upjohn Co., supra, 449 U.S. at 389, 101 S.Ct. at 677, 66 L.Ed.2d at 591); see Fellerman, supra, 99 N.J. at 498; Macey, supra, 179 N.J. Super. at 539. Thus, "[w]here the privilege is applicable, `it must be given as broad a scope as its rationale requires.'" United Jersey Bank, supra, 196 N.J. Super. at 561 (quoting Ervesun v. Bank of N.Y., 99 N.J. Super. 162, 168 (App.Div. 1968), certif. den. 51 N.J. 394 (1968)).
The attorney-client privilege, however, is not absolute. See Fellerman, supra, 99 N.J. at 502; In re Selser, 15 N.J. 393, 405-406 (1954). It advances secrecy and therefore "`runs counter to the fundamental theory of our judicial system that the fullest disclosure of the facts will best lead to the truth.'" United Jersey Bank, supra, 196 N.J. Super. at 560 (quoting In re Selser, supra, 15 N.J. at 405; see Fellerman, supra, 99 N.J. at 502. "[C]onsiderations of public policy and concern for proper judicial administration have led the legislature and the courts to fashion limited exceptions to the privilege." Fellerman, *34 supra, 99 N.J. at 502; see Clark v. United States, 289 U.S. 1, 13, 53 S.Ct. 465, 469, 77 L.Ed. 993, 999 (1933); In re Selser, supra, 15 N.J. at 405; United Jersey Bank, supra, 196 N.J. Super. at 560-561.
The New Jersey Supreme Court in In re Kozlov, 79 N.J. 232 (1979) adopted a three part test for determining whether the attorney-client privilege must yield to other important societal concerns. The court stated:
[T]here are necessary foundations to the valid piercing of any such privilege, one of which is absent here. There must be a legitimate need of the party to reach the evidence sought to be shielded. There must be a showing of relevance and materiality of that evidence to the issue before the court. The record here clearly bespeaks the existence of these necessary elements. But it must also be shown, as pointed out by Justice Mountain for this Court in Farber, supra, to the satisfaction of "the trial judge, by a fair preponderance of the evidence including all reasonable inferences, that * * * the information * * * could not be secured from any less intrusive source." [Id. 79 N.J. at 243-244 (quoting In re Farber, 78 N.J. 259, 276-277 (1978), cert. den. New York Times Co. v. New Jersey, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978)); emphasis in original].
The test set forth in Kozlov was applied by us in United Jersey Bank v. Wolosoff, 196 N.J. Super. 553 (App.Div. 1984) in a context relevant to this case. In United Jersey Bank, plaintiff alleged that defendant's attorneys had "intentionally and fraudulently misrepresented [defendant's] financial condition in order to obtain a reduction of the amount owed [to plaintiff] on the judgment." Id. at 559. During the course of discovery, plaintiff acknowledged that certain documents it had prepared during the period of settlement negotiations were relevant to the issue of whether it had relied on defendant's attorney's representations of defendant's finances. Therefore, plaintiff waived the attorney-client privilege with respect to these documents. Id. at 559-560. With respect to all other documents and materials, however, plaintiff's attorney asserted the attorney-client privilege. Id. at 560. The trial judge held, as a matter of law, that "all confidential communications were to be disclosed because they might bear upon the question of reasonable reliance." Id. at 560. On appeal, we noted that defendant had "satisfied the tripartite formula established in In re Kozlov ... *35 and to that extent the attorney-client privilege must yield." Id. at 565. However, we found the trial judge's waiver order too broad:
In any event, plaintiff's knowledge of [defendant's] financial condition at the time of the stipulation of settlement may well reveal the extent to which it relied upon the alleged misrepresentations. Since it is undisputed that [plaintiff's in-house counsel] played a key role in negotiating the settlement, communications between him and others may be extremely probative. Clearly, defendants have a "legitimate need" for disclosure of such information, the communications are both "relevant and material," and the evidence cannot be secured from any "less intrusive source." [Id. 196 N.J. Super. at 565 (quoting In re Kozlov, supra, 79 N.J. at 243-244)].
* * * * * * * *
We are persuaded that "when confidential communications are made a material issue in a judicial proceeding, fairness demands waiver of the privilege." In point of fact, plaintiff acknowledged as much when it agreed to release all documents, including those otherwise protected by the attorney-client privilege, with respect to the time period during which the settlement was negotiated. However, we are persuaded that this offer was far too restrictive. Conceivably, there may be communications between [plaintiff's in-house counsel] and others that pertain to defendant's financial condition which were made prior to the entry of the judgment on March 2, 1981. To the extent that such documents are pertinent to the issue of reasonable reliance, we believe that they should be disclosed.
Nonetheless, we are convinced that the order of the Chancery Division goes well beyond that which is reasonably necessary to insure fairness to the parties. We are satisfied that the competing demands of secrecy and disclosure can best be accommodated by compelling the release of only those documents which bear upon the extent to which plaintiff reasonably relied upon the representations allegedly made during the negotiation process. Obviously, this question cannot be fairly resolved without a painstaking review and inspection of the communications sought to be barred. We note in that regard that plaintiff cannot invoke the privilege to render conclusive its own evaluation of the nature and character of the materials in question. Rather, an in camera inspection by the court is clearly required. [Id. 196 N.J. Super. at 567-568; citation omitted; footnote omitted].
* * * * * * * *
Here, as all parties acknowledge, our law compelled disclosure of communications otherwise protected by the attorney-client privilege to the extent that they were pertinent to the question of reasonable reliance. Therefore, disclosure was mandated by virtue of the necessity of piercing the privilege under In re Koslov, supra. This limited disclosure, however, extends no further than that particular subject matter. Wholly irrelevant communications before and after settlement negotiations having no possible bearing on this question remain protected by the attorney-client privilege. [Id. at 567 n. 3; emphasis supplied].
*36 Here, Blitz claims that Eisenberger falsely represented the environmental condition of the premises to her. She alleges that she was only "vaguely aware of ECRA" and that she relied upon Eisenberger's false representations and promises and was fraudulently induced into signing the agreement of sale. She further alleges that she "trusted Eisenberger to such an extent that she overrode the advice of counsel who insisted that all promises and representations of any sort should be contained in the Agreement."
Legal fraud may be proved by the establishment of five elements: (1) a material representation by defendant of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intent that the plaintiff rely upon it; (4) reasonable reliance by the plaintiff; and (5) resulting damage to the plaintiff. Jewish Center of Sussex Cty. v. Whale, 86 N.J. 619, 624 (1981); Enright v. Lubow, 202 N.J. Super. 58, 72 (App.Div. 1985), certif. den. 104 N.J. 376 (1986); Foont-Freedenfeld v. Electro-Protective, 126 N.J. Super. 254, 257 (App.Div. 1973), aff'd o.b. 64 N.J. 197 (1974). "[E]quitable fraud does not require the element of scienter, knowledge of the falsity and an intent to obtain an undue advantage." Enright, supra, 202 N.J. Super. at 72; see Jewish Center of Sussex Cty., supra, 86 N.J. at 625; Foont-Freedenfeld, supra, 126 N.J. Super. at 257. Reasonable reliance thus constitutes a critical element of a cause of action for legal or equitable fraud. United Jersey Bank, supra, 196 N.J. Super. at 564; see DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. 242, 251 (App.Div. 1983), certif. den. 94 N.J. 598 (1983); Prosser, Law of Torts (4 ed. 1971), § 108 at 714-720.
The nature and extent of the reliance required to establish a claim of legal or equitable fraud is subject to debate. See United Jersey Bank, supra, 196 N.J. Super. at 564. Although "[o]ne who engages in fraud ... may not urge that one's victim should have been more circumspect or astute," Jewish Center of Sussex Cty., supra, 86 N.J. at 626 n. 1, "if a party to whom *37 representations are made nevertheless chooses to investigate the relevant state of facts for himself, he will be deemed to have relied on his own investigation and will be charged with knowledge of whatever he could have discovered by a reasonable investigation." DSK Enterprises, Inc., supra, 189 N.J. Super. at 251.
In connection with the question of reliance and her knowledge of the environmental condition of the property, Blitz does not contest that defendants satisfied the tripartite Kozlov test with respect to confidential attorney-client communications made up until the signing of the agreement of sale. Rather, she argues that Kozlov has not been satisfied with respect to the communications made from the date of the signing of the agreement of sale until the date of the institution of the action. We agree. Blitz placed in issue what she knew prior to the signing. This gave rise to a need within the meaning of Kozlov for defendants to reach all evidence of that knowledge including evidence of otherwise privileged communications which took place prior to the signing. An entirely different case is presented with respect to the post-signing period.
Defendants argue that Blitz placed in issue "her knowledge of environmental laws and her reasons for not entering into the subject transaction" and that those reasons justify waiver of the attorney-client privilege for the period from the signing of the agreement to the institution of the suit. Each of these arguments is wide of the mark. Blitz' knowledge of the environmental laws or the environmental condition of the premises acquired after the signing is entirely irrelevant to the reliance issue. The alternative suggestion that Blitz might have had other reasons for refusing to consummate the deal, which reasons could possibly be revealed by exposing confidences between Blitz and her lawyers exchanged after the signing, is pure speculation which falls far short of the legitimate need requirement of Kozlov. The rest of defendants' arguments are equally unconvincing. They suggest that it is possible to learn from the revelation of post-signing confidences what Blitz knew *38 pre-signing. Although entirely speculative, this could prove correct. Theoretically, Blitz might have made an off-hand comment to one of her lawyers the day after the signing in which she cited the ECRA laws, chapter and verse. The problem with defendants' theory is that possibility is not enough. We are not reviewing an ordinary discovery motion. There, the standard would be whether the inquiry was reasonably calculated to lead to the discovery of admissible evidence. R. 4:10-2(a). Under Kozlov, the standard is higher. That is because in this situation we are attempting to strike the delicate balance between two of the basic but competing principles underpinning our system of jurisprudence. Reconciling the policy of full disclosure with the confidentiality necessary to ensure faith and frankness between attorney and client requires a greater showing than that the invasion will possibly produce admissible evidence. Thus, we agree entirely with the waiver as to pre-signing communications but draw the line as of the date of the signing. This is not to suggest that if evidence from a non-privileged source establishes the legitimate need (within the meaning of Kozlov) for discovery of a particular privileged communication made after the signing that an application would be denied. That will depend on the evidence. We reverse and remand for the entry of an appropriate order.