234 N.J. Super. 318 (1989)
560 A.2d 1243
ALLEN WEINGARTEN, PLAINTIFF-APPELLANT,
v.
GLORIA WEINGARTEN, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1989.
Decided July 6, 1989.
*320 Before Judges O'BRIEN, SCALERA and STERN.
Paul A. Rowe argued the cause for appellant (Greenbaum, Rowe, Smith, Ravin, Davis and Bergstein, attorneys, Paul A. *321 Rowe of counsel, Mark H. Sobel and Jacqueline M. Printz, on the brief).
Glenn R. Turtletaub argued the cause for respondent (Greenberg, Margolis, Ziegler, Schwartz, Dratch, Fishman, Franzblau and Falkin, attorneys, Herman J. Ziegler, of counsel and on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
In this post-judgment divorce action we granted Allen Weingarten (the husband) leave to appeal from an order of the trial court relating to the discovery of evidence assertedly protected by the attorney-client privilege.
Briefly, in January 1986, a final judgment of divorce was entered which incorporated a property settlement agreement by the parties. In May 1986, Gloria Weingarten (the wife) brought a motion to vacate the final judgment of divorce particularly as it related to the division of the marital estate.[1]
In the accompanying certifications, she claimed that the husband had misled her as to the value of the marital property. Specifically, she alleged that he had represented to her that the property was worth approximately $12,700,000. After the divorce became final, however, she obtained information which led her to believe that the marital assets were worth in excess of $50,000,000. She listed some of the assets which allegedly were not included in the agreement and asserted that during the divorce proceeding, her then attorney, Robert Diamond, had advised her it was necessary "to undertake a complete investigation of the husband's assets and hire appraisers to get values of those assets." However, when the husband reportedly contacted the wife and assured her that he would provide information about the assets, she told Diamond "to hold off on the *322 appraisers and accountants ..." The wife then negotiated directly with the husband. According to the wife's certification, "Diamond still felt that we should undertake a review and confirmation of the value of the assets and the accuracy of the listing of the assets themselves." In response, she "told Mr. Diamond that [her] husband had assured [her] of and swore to the accuracy of the statement of assets he supplied. [She] did not want to fight or argue with [her] husband ..." Although Diamond advised her of the divorce hearing date, she informed him that she would not attend. Finally, in her reply certification, the wife stated that her attorney had informed her "that the cut-off date for assets was the date of the filing of the complaint or the date of the agreement."
In a responding certification, the husband admitted that although the value of the assets in his financial statements was not entirely up to date at the time the agreement was negotiated, those statements did reflect all of his assets and had even been used for other business purposes, such as the procurement of financing. The husband indicated that the items which he had allegedly failed to include in those financial statements had actually been acquired after the property settlement agreement had been negotiated.
In October 1986, in preparation for a plenary hearing on the wife's motion, the trial court issued a schedule for discovery proceedings, including interrogatories and depositions. On March 26, 1987, however, following a motion by the husband, an order was entered which allowed him to discover any relevant matter except that protected by the attorney-client privilege. It directed Diamond to testify and also to produce documents except to the extent that such information also was privileged. The husband sought to prosecute an appeal from that interlocutory order but this court and the Supreme Court both denied him permission to do so at that juncture.
The husband then undertook to depose Diamond and also sent a notice for the wife to produce all documents pertaining *323 to the property settlement negotiations. In August 1988, during his deposition, Diamond asserted the attorney-client privilege as directed by the wife's present attorney. Frustrated by the assertion of the privilege, the husband's attorney eventually terminated that deposition and filed a motion to compel Diamond to testify more fully, without the protection of the privilege. On January 11, 1989, the trial court issued an order in which it concluded that the wife indeed had waived the attorney-client privilege, but only to a limited extent and it therefore ordered Diamond to answer certain questions but qualified it by indicating that he did not have to answer others. The court further reserved judgment on the husband's request for the production of documents, "pending the receipt of documents by the court...." Orally, the court conditioned this further by stating that the husband first had to produce a list of the desired documents, rather than requiring the wife to reveal an inventory of what documents she possessed so that the husband could select therefrom.
The husband moved for leave to appeal from that order, which we granted. The wife joined in the husband's motion for leave to appeal and in her brief at that point, also took issue with the trial court's conclusion that she had waived the privilege to any degree. However, no notice of motion for leave to cross-appeal was filed by her, and the husband contends that she is therefore precluded from raising any affirmative claims on this appeal. Nevertheless, the claims asserted by her are intertwined with the issues raised by the husband's appeal and are addressed herein.
The husband claims that once the wife had disclosed private communications with her attorney in her certification, she waived that privilege with respect to the subject matter of those statements. Essentially, the husband argues that the wife should not be able to "pick and choose" the matters which she wishes to disclose and that the trial court erred when it *324 concluded she had effectuated only a limited waiver of the attorney client privilege.
The husband's brief recites the issues as follows:
I. The trial court misapplied the law of waiver of the attorney-client privilege.
A. The attorney-client privilege is to be narrowly construed since it impedes the factfinding process.
B. Once one confidential communication has been disclosed, there is a waiver as to all other communications on the same subject matter.
II. The trial court's order allows defendant [the wife] to refuse to disclose even a list of the documents alleged to be privileged and thereby prevents any judicial examination on this subject.
In New Jersey, the attorney-client privilege is well established as one which will be vigorously protected by our courts. State v. Sugar, 84 N.J. 1, 13 (1980). See Matter of Nackson, 114 N.J. 527 (1989); United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561 (App.Div. 1984); In re Kozlov, 156 N.J. Super. 316, 321 (App.Div. 1978), rev'd 79 N.J. 232 (1979). Recently, we had occasion to again recite the history and purpose of the privilege. See Blitz v. 970 Realty Associates, 233 N.J. Super. 29, 33-36 (App.Div. 1989). The common law attorney-client privilege, recognized as the oldest of such privileges, is codified by N.J.S.A. 2A:84A-20 and Evid.R. 26. In the present case, no one disputes the fact that the wife was Diamond's client at the time of the divorce proceedings and, absent her institution of this post-judgment litigation, the material sought would be protected by the privilege. However, the inquiry here centers on whether there was a waiver of that privilege by the wife's institution of these proceedings and by her voluntary statements in the certifications discussing those confidential communications between her and Diamond although the husband seems to rely only on the latter.
In United Jersey Bank v. Wolosoff, 196 N.J. Super. 553 (App.Div. 1984), we addressed the very question of whether a client waives the privilege when he himself makes the contents of the confidential communications a material issue in a case "by virtue of the allegations in the pleadings." [Ibid. at 558]. There, defendant Wolosoff's default on a $4,000,000 loan resulted *325 in a judgment against him. The judgment creditor bank agreed to settle that judgment for $875,000, based on defendant's asserted precarious financial condition. Later, the bank learned that defendant had not fully disclosed his assets during those settlement proceedings and therefore undertook to rescind that settlement, claiming that it had relied on defendant's misrepresentations. In that action, the bank agreed to waive the attorney-client privilege with respect to documents prepared during settlement negotiations, but sought to assert the privilege with respect to other materials. The Wolosoff trial court held that all confidential communications were subject to disclosure because they might bear on the question of the bank's reasonable reliance on defendant's statements. Wolosoff, 196 N.J. Super. at 560.
We found that the Wolosoff trial court's order went too far. Citing numerous decisions in which the attorney-client privilege was deemed to have been waived because the information sought was "highly germane to a critical issue raised by the party seeking to invoke" the privilege, Wolosoff, supra, 196 N.J. Super. at 566, we noted "the inherent inequity in permitting plaintiff to use the privilege as a sword rather than a shield." Id. at 567. We limited the waiver, however, only to communications which were material to the issues. Therefore, we held that, to the extent that the confidential communications were pertinent to the question of reasonable reliance, there was a limited waiver of the privilege. We further concluded, however, that the bank, as the holder of the privilege, could not itself determine which of its allegedly privileged documents were subject to disclosure, but rather, required it to submit all documents to the trial court for an in camera inspection to determine whether the attorney client privilege was waived because the documents bore upon the issues raised. See Blitz v. 970 Realty Assoc., supra, 233 N.J. Super. 29 (attorney-client privilege may be waived where client puts in issue her reliance on another's fraudulent conduct in real estate transaction); Aysseh v. Lawn, 186 N.J. Super. 218, 223 (Ch.Div. 1982) (a party *326 who uses his attorney as a witness waives the privilege, at least as to confidential transactions covered by the testimony); Sicpa North Atlantic v. Donaldson Enterprises, Inc., 179 N.J. Super. 56, 62 (Law Div. 1981) ("[a] party cannot choose to disclose only so much of an allegedly privileged matter as is helpful to his case; once a party begins to disclose a confidential communication for a purpose outside the scope of the privilege, the privilege is lost.") One leading commentator has put it this way,
[A] client's offer of his own or the attorney's testimony as to a specific communication to the attorney is a waiver as to all other communications to the attorney on the same matter. This is so because the privilege of secret consultation is intended only as an incidental means of defense, and not as an independent means to attack, and to use it in the latter character is to abandon it in the former. [8 Wigmore, Evidence, § 2327 at 638 (McNaughton Rev. 1961), (emphasis in original)].
There are many reported cases holding that once a party discloses privileged communications, he may have waived the privilege with respect to related privileged information pertaining to the same subject matter. See In re Subpoenas Duces Tecum, 738 F.2d 1367, 1369 (D.C. Cir.1984) (voluntary disclosure by the holder of such a privilege is inconsistent with the confidential relationship and thus waives the privilege); In re Sealed Case, 676 F.2d 793, 809 (D.C. Cir.1982) ("any voluntary disclosure by the client to a third party breaches the confidentiality of the attorney client relationship and therefore waives the privilege, not only as to the specific communication disclosed but often to all other communications relating to the same subject matter"); Cope v. Cope, 40 Cal. Rptr. 917, 927, 230 Cal. App.2d 218, 233 (Dist.Ct.App. 1964) (where wife in marital action did not object to introduction of affidavits by her attorney which revealed confidential communications, the privilege is waived). Before such confidential communications may be required to be revealed, however, a court must determine that there is a real need for such evidence in the proceeding and that the same information may not be secured "from any less intrusive source." Wolosoff, supra, 196 N.J. Super. at 558. *327 Thus, the husband here must demonstrate a legitimate need to reach the evidence sought to be shielded because of its relevance and materiality to the issues brought before the court by the wife's application and that such information cannot be secured from a less intrusive source. In re Kozlov, 79 N.J. 232, 243-344 (1979). See also Matter of Nackson, supra, 114 N.J. at 535.
In light of the foregoing authorities, it is clear that the wife did waive that privilege in this case by the very institution of these proceedings and also by her disclosure of the confidential communications with her attorney. She claims that she relied on the information supplied to her by the husband when preparing for settlement. Thus, logically, the husband would be entitled to explore the existence of such evidence as may enable him to demonstrate that she did not rely on that information or that she may be estopped from claiming such because she told her attorney to stop searching for other information about his assets. Such matters obviously are relevant and material to a consideration of the issues raised by the wife's motion to vacate the divorce judgment and information bearing on them becomes discoverable.
In other words, the wife's motion to vacate the judgment of divorce is premised on the claim that the husband's misrepresentations prompted her to ignore or not follow the recommendations of her attorney which might have enabled her to learn his full net worth before considering the settlement.
Without attempting to outline all of the elements of her cause of action, suffice it to say that, in order to obtain judicial relief here she will have to prove that his fraudulent conduct in failing to disclose the true value of the assets was the basis of her decision to accept an agreement which was not fair and equitable. Rosen v. Rosen, 225 N.J. Super. 33, 36-37 (App.Div. 1988), certif. den., 111 N.J. 649 (1988); R. 4:50-1(f). She also will have to show that she was not otherwise aware of the husband's undervaluation of the assets or that she would have *328 been likely to secure such information but for the husband's actions. Wolosoff, supra, 196 N.J. Super. at 564 (App.Div. 1984) (party claiming fraud or misrepresentations will be required to show that it relied on the fraudulent statements or misrepresentations); Blitz, supra, 233 N.J. Super. at 33-37 (where plaintiff-purchaser claimed that she had relied on defendant-seller's fraudulent misrepresentations, respecting the environmental conditions of the subject property, the court considered the attorney-client privilege waived with respect to her communications with her attorney prior to closing since they might show that she was fully aware of the scope of the environmental problem); cf. Edgerton v. Edgerton, 203 N.J. Super. 160, 171-173 (App.Div. 1985); Palko v. Palko, 73 N.J. 395, 397-398 (1977). Likewise, a crucial inquiry might be whether the wife was aware of the husband's alleged fraudulent conduct at the time she signed the agreement, and communications with her attorney bearing on that issue are certainly relevant to this inquiry. For example, she may have indicated to Diamond that, although she was aware of the potential value of the estate, she had settled because of a desire to amicably resolve their dispute as quickly as possible. Thus, to the extent the attorney's testimony is necessary to the husband's defense and is relevant to the issues raised by the wife's application, if the information sought is not available from another source, the attorney client privilege should be deemed to have been waived. Kozlov, supra, 79 N.J. at 243-244.
However, on this sparse record it is difficult for us to predict exactly what questions will arise on this issue during the course of Diamond's deposition and other discovery. What is clear though, is that the trial court erred in restricting Diamond's obligation to answer only some of the questions asked at the deposition. Blitz, supra. Diamond should be required to answer any question which is related to the issues raised by the wife's motion to vacate the judgment. See Wolosoff, supra, 196 N.J. Super. at 567 n. 3 (communications which bear on the *329 particular subject matter in dispute may be disclosed, but unrelated communications need not be disclosed).
Therefore, the trial court will have to continue careful supervision over the information sought by the husband. Cf. Wolosoff, supra, 196 N.J. Super. at 568 (suggesting in camera evaluation of allegedly privileged materials). Accordingly, such decisions must be left to the sound direction of the trial court within the parameters noted herein. Thus, the court should make itself available to decide any such disputes which may arise during the course of discovery.
The husband also claims that the trial court erred when it required him to first identify which documents in the wife's possession he desires her to produce. He contends that compliance with such an order is impossible because he has no way of knowing what documents are in her possession or may be relevant. Thus, he argues that she should be required to first produce all documents for an in camera review by the trial court. The trial court's actual order on this issue is somewhat cryptic. At the hearing prior to issuance of that order, however, the trial court informed counsel, "[i]f you want me to look at papers in chambers, including this letter, I'll ask you to submit it to me separately along with a list of papers that you want examined."
It is clear that both oral and written communications between an attorney and his client are protected by the privilege. Sicpa North America v. Donaldson Enterprises Inc., supra, 179 N.J. Super. 56 (report prepared by attorney for corporation is privileged communication); see also Wolosoff, supra, 196 N.J. Super. at 568 (privileged documents may be subject to disclosure to the extent they bear on material issues in the case). However, the trial court initially must determine whether the attorney-client privilege has been waived with respect to these documents in accordance with our prior comments.
Again, in light of the limited facts before us we caution that the "competing demands of secrecy and disclosure can best *330 be accommodated by compelling release of only those documents which bear upon the extent to which [the wife] reasonably relied upon [the husband's] representations allegedly made during the negotiation process [which ultimately produced the property settlement agreement]." Wolosoff, supra, 196 N.J. Super. at 567-568. However, as in Wolosoff, "this question cannot be resolved without a painstaking review and inspection of the communications sought to be barred." Thus, as in Wolosoff, the wife here should be required to submit all pertinent documents to the trial court in the first instance, accompanied by her written assertions concerning which ones are protected by the privilege and relevancy considerations. The court should then conduct an in camera inspection of those documents with that in mind, explain its reasons in a sealed record and release to the husband those documents not protected thereby. Cf. Martin v. Educational Testing Service, Inc., 179 N.J. Super. 317, 327-329 (Ch.Div. 1981) (where a party seeks to discover confidential documents which contain relevant information, the court "has discretion to take whatever steps are necessary to protect defendant's confidential documents, while still permitting plaintiff the right to discovery"); DeGraaff v. DeGraaff, 163 N.J. Super. 578, 583 (App.Div. 1978) (where party in divorce action seeks confidential tax documents of former spouse and the former spouse's new wife, court may excise confidential material while providing relevant information to party seeking discovery). In this way the husband will be able to obtain relevant information, while the court maintains the wife's attorney-client privilege to the extent required. Such a procedure will also serve to preserve the record indicating the basis for the trial court's decision for any appellate review.
In sum, to the extent the communications with her attorney bear on the issues involved here, the privilege should be deemed waived. The waiver is not a complete one, however, but only applies to information relevant to the issues implicated by her application to the court. Therefore, the matter is remanded with instructions that the trial court determine the scope of the *331 waiver consistent with the principles enunciated in this opinion and carefully continue to supervise the discovery process in a manner which insures that the attorney-client privilege is respected, but which allows the husband to obtain the necessary information relative to the issue raised by these proceedings. Specifically, the trial judge should be available to supervise the deposition of Diamond and to conduct an in camera review to determine what documents, or portions thereof, are subject to disclosure.
Reversed and remanded.
NOTES
[1] At the outset we note that we express no opinion regarding the merits of the wife's allegations or any defense which may be raised by the husband.