694 A.2d 264

BENJAMIN DONTZIN AND NANCY DONTZIN, PLAINTIFFS-·
RESPONDENTS, v. WILLIAM MYER AND SUSAN MYER,
DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued March 25, 1997—Decided May 23, 1997.

Before Judges DREIER, D'ANNUNZIO and NEWMAN.

*Henry Gurshman* argued the cause for appellants (*Mr. Gurshman*, on the brief).

*Robert M. Benbrook* argued the cause for respondents (*Benbrook & Benbrook*, attorneys; *Sieglinde K. Rath*, on the brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

Defendants appeal, pursuant to leave granted, from an order granting plaintiffs' motion to compel the deposition of defendant

William Myer and his attorney, Henry Gurshman, "with respect to matters falling within the attorney client privilege."

Plaintiffs, Benjamin Dontzin and his wife Nancy, entered into a contract with defendants, William Myer and his wife Susan, in which defendants agreed "to purchase real property consisting of 130± acres, with farmhouse and other improvements situate thereon, located in the Township of Lebanon, Hunterdon County ... and identified on the Lebanon Township Tax Map as Block 57, Lots 27 and 28...." " This was the entire contract description of the property. The purchase price was $1,100,000, and the contract required plaintiffs to convey "good and marketable title." The contract was dated August 14, 1995, and was signed by plaintiffs and defendants. It provided for a closing on November 30, 1995.

By letter dated August 23, 1995, defendants' lawyer, Gurshman, advised plaintiffs' lawyer that "my clients have advised me that they wish to withdraw their offer to purchase your clients' property as embodied in the contract which I sent to you in my letter of August 9, 1995." Gurshman requested the return of his clients' deposit. The record establishes that on August 22, 1995, defendants contracted to buy a property in Union Township, Hunterdon County for $600,000.

By letter dated November 22, 1995, Gurshman wrote to plaintiffs' lawyer explaining defendants' position:

> In the above matter, my clients' position is that they contracted to purchase two specifically designated Lots on the Tax Map, that this was the description incorporated into the contract, and that they will not purchase the property since the title search has revealed that your clients do not in fact own all of the property which they purported to sell.

Plaintiffs commenced this action for breach of contract in July 1996. In their answer to the complaint, defendants alleged that plaintiffs had breached the contract and that there was a failure of consideration. According to Gurshman's certification in opposition to plaintiffs' discovery motion, these defenses are based on plaintiffs' alleged lack of title to all of Block 57, Lots 27 and 28.

In granting plaintiffs' motion, the trial court relied on *In re Kozlov*, 79 *N.J.* 232, 398 *A.*2d 882 (1979), which recognized that the attorney-client privilege may be pierced in certain circumstances where there is a legitimate need for the evidence, the evidence is relevant and material to the issues in a case, and the information could not be secured from a less intrusive source. *Id.* at 243–44, 398 *A.*2d 882. We reproduce the trial court's application of *Kozlov* in the present case:

This case does meet the first requirement; namely plaintiffs' legitimate need for the evidence.

To be successful, plaintiffs need to prove that at the time the contract was signed, defendants knew where the property's actual boundaries were.

Plaintiffs need to show that defendants did not rely on the tax map. Thus, they need to know what communications occurred between defendants and their attorney on the subject.

This case also meets the second requirement from Kozlov, which is relevance and materiality. Not only is the evidence relevant and material to plaintiffs' proofs, as stated above, but it is also relevant and material to defendants' case. Defendants' first affirmative defense is that plaintiffs breached the contract by not providing marketable title.

Arguably, whether defendants relied on the description of the property contained in the contract is relevant to this defense. Communications between defendants and their attorney may reveal that in deciding whether to enter into the contract with plaintiffs, defendants relied solely on a visit to the property and did not rely at all on the tax map.

Finally, plaintiffs meet the final prong of Kozlov. This information cannot be secured from any less intrusive source. The only person whom defendants would have discussed the full details of their purchase of plaintiffs' property with would be their attorney. Since plaintiffs meet the three prongs of Kozlov with respect to any communications between defendants and Mr. Gurshman regarding the purchase of plaintiffs' property, this Court hereby permits plaintiffs to depose Mr. Gurshman and William Myer on this issue, and to request documents on the issue.

Similarly, plaintiffs meet the requirements regarding any communications about the purchase of the Union Township property. Defendant Susan Myer stated that defendants may have entered into the contract to purchase the Union Township property within eight days of the defendants' August 23, 1995 letter stating that they would not purchase plaintiffs' land. Given this time frame, communications between defendants and Mr. Gurshman regarding the purchase of the Union Township property may be relevant to and in fact joined with communications regarding defendants' alleged reliance on the tax map description in the contract with plaintiffs. Therefore, this Court will allow plaintiffs to discover communications between defendants and Mr. Gurshman about the purchase of the Union Township property.

Plaintiffs also meet the requirements in Kozlov regarding defendants' motive for conducting the title search. Plaintiffs need this information to determine whether defendants refused to comply with the contract because of the discrepancy discovered by the search or whether they reneged on the contract and then sought some justification. The information is relevant and material to the issue of why defendants refused to comply with the contract.

We now reverse. The attorney client "privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to 'encourage full and frank communication between attorneys and their clients.'" *United Jersey Bank v. Wolosoff,* 196 *N.J.Super.* 553, 561, 483 *A.2d* 821 (App.Div.1984) (quoting *Upjohn Co. v. United States,* 449 *U.S.* 383, 389, 101 *S.Ct.* 677, 682, 66 *L.Ed.2d* 584, 591 (1981)). Furthermore, "[w]here the privilege is applicable, 'it must be given as broad a scope as its rationale requires.'" *Ibid.* (quoting *Ervesun v. Bank of N.Y.,* 99 *N.J.Super.* 162, 168, 239 *A.2d* 10 (App.Div.), *certif. denied,* 51 *N.J.* 394, 241 *A.2d* 11 (1968)). However, "the privilege results in suppression of evidence and to that extent is at war with the truth." *Ibid.* (citations omitted).

In New Jersey, the attorney client privilege is found in both *N.J.R.E.* 504 and *N.J.S.A.* 2A:84A–20. They provide, in relevant part, that

communications between [a] lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) to prevent his lawyer from disclosing it,

[*N.J.R.E.* 504(1).]

This rule contains express exceptions, not relevant in the present case, and even in the absence of an express exception, the privilege can be pierced when the three-prong *Kozlov* test is met. *Kozlov, supra,* 79 *N.J.* at 232, 398 *A.2d* 882 (1979).

In the present case, the substantive law applicable to plaintiffs' breach of contract action is the beginning point in our application of the *Kozlov* exception to the attorney-client privilege. We can address the substantive law only in general terms, however, because the record generated in connection with the discovery motion is sparse.

■ In construing a contract we must determine the intention of the parties "as disclosed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain are to be regarded." *Casriel v. King,* 2 *N.J.* 45, 50, 65 *A.*2d 514 (1949). Extrinsic evidence is admissible as an aid to understand the significance of the contract language, but not to give effect to an intent at variance with that language. "So far as the evidence tends to show not the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant." *Id.* at 51, 65 *A.*2d 514. "In short, we are to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose." *Ibid.* These principles, though expressed nearly fifty years ago, apply today. *See Jacobs v. Great Pac. Century Corp.,* 104 *N.J.* 580, 586, 518 *A.*2d 223 (1986); *Communications Workers v. Monmouth County Bd. of Soc. Servs.,* 96 *N.J.* 442, 452, 476 *A.*2d 777 (1984).

■ Moreover, the intent which controls the contract is the "intention common to both [parties]." *Friedman v. Tappan Dev. Corp.,* 22 *N.J.* 523, 531, 126 *A.*2d 646 (1956). And "[i]t is not the real [subjective] intent but the intent expressed or apparent in the writing that controls." *Ibid.* (citations omitted). Agreement on essential terms of a contract is a prerequisite to its enforceability. *Weichert Co. Realtors v. Ryan,* 128 *N.J.* 427, 435, 608 *A.*2d 280 (1992).

The substantive dispute in the underlying contract action is with regard to the property's contract description. The core issue is what did the parties agree to buy and sell. The contract description is not definite. It contains two identifying characteristics. The contract describes a farm "consisting of 130± acres, with farmhouse and other improvements" in Lebanon Township, in Hunterdon County. It also describes the property as "identified" on the township's tax map "as Block 57, Lots 27 and 28."

An indefinite description, however, is not an impediment to a binding contract. An indefinite description is sufficient "if it furnishes the 'means or key' by which the description may be made certain and identified with its location on the ground." *Beverage v. Canton Placer Mining Co.,* 43 *Cal.*2d 769, 278 *P.*2d 694, 698 (1955) (quoting *Gordon v. Perkins,* 108 *Cal.App.* 336, 291 *P.* 644 (1930)). Evidence is admissible "to explain the description according to 'the situation of the parties and the surrounding circumstances' ... and so identify with reasonable certainty the particular property intended." *Beverage, supra,* 278 *P.*2d at 698 (citations omitted); *see also Sears v. Polan's 5 Cents to $1.00 Store of Annapolis, Inc.,* 250 *Md.* 525, 243 *A.*2d 602 (1968); *Bryan v. Bishop,* 227 *Ark.* 949, 302 *S.W.*2d 524 (1957).

We must apply the *Kozlov* exception in the context of the relevant substantive law and the issue of contract interpretation in this case. *Kozlov* did not abolish the privilege or relegate it to the status of a pedestrian discovery dispute. More recently, the Court in *Matter of Nackson,* 114 *N.J.* 527, 532, 555 *A.*2d 1101 (1989), in discussing the *Kozlov* test for piercing the privilege, described the test as involving "circumstances so grave ... that the privilege must yield to the most fundamental values of our justice system." *Ibid.* Although the Court in *Kozlov* recognized that the privilege could be pierced in the proper case, the Court did not pierce the privilege in *Kozlov.* To the contrary, it recognized that the privilege "has a well-defined relationship, recognized and defined over the centuries, to the administration of justice, to the basic needs of the human condition, to the essential rights of man and thus to the public interest. As such it clearly deserves the continued protection of the courts." *Kozlov, supra,* 79 *N.J.* at 243, 398 *A.*2d 882; *see also Nackson, supra.*

Applying the *Kozlov* test, we agree that what defendants told their lawyer in confidence may have some probative value regarding the property defendants understood they were going to purchase and, therefore, such confidential communication may satisfy the relevance prong of the *Kozlov* test. We observe that it

would be a rare confidential communication that would not satisfy the relevancy test. It is likely, however, that the probative value of other extrinsic evidence will be more persuasive and satisfying regarding the *common* intention of the parties.

Such evidence undoubtedly will include the real estate broker listing agreement; whether the defendants saw the written listing; other information, if any, imparted to defendants by plaintiffs or their agents regarding the property; the circumstances under which the property was shown to defendants; the extent to which defendants walked the property and representations regarding physical boundaries, if any, made to them during any physical inspection; conversations between the lawyers regarding the drafting of the contract and similar conversations between the lawyers and the brokers.

It appears from the sparse record that the parties have not fully developed these extrinsic facts, or, if they have done so, the facts have not been included in the record. We, therefore, conclude that plaintiffs have not established a "legitimate" need for the confidential communication sufficient to satisfy that prong of the *Kozlov* construct, and they have not come close to satisfying the third element of that test, that the information could not be secured from a less intrusive source. In the context of this case, "information" does not refer to defendants' confidential discussions with their lawyer. If it were otherwise, all such discussions would satisfy the third prong. In this case, it refers to extrinsic evidence, including non-confidential conversations, which would shed light on the common intention of the parties.

Plaintiffs rely on *Blitz v. 970 Realty Associates,* 233 *N.J.Super.* 29, 557 *A.*2d 1386 (App.Div.1989); *Weingarten v. Weingarten,* 234 *N.J.Super.* 318, 560 *A.*2d 1243 (App.Div.1989); and *United Jersey Bank v. Wolosoff, supra,* 196 *N.J.Super.* at 553, 483 *A.*2d 821. Those cases are distinguishable from the present case. *Weingarten* involved a former wife's motion to vacate a divorce judgment and the settlement it incorporated. The wife contended that the settlement was based on her former husband's misrepresentation

of his assets and their value. In her motion papers, the wife revealed some, but not all, of her confidential communications with her lawyer regarding the settlement. Our decision to pierce the privilege was based in part on the wife's waiver of the privilege. *Id.* at 327, 560 *A.*2d 1243.

*Blitz* was an action by a contract purchaser of real property alleging fraud with regard to the property's environmental status. The trial court ordered plaintiff to waive the privilege with respect to communications concerning environmental matters because plaintiff's knowledge of the environmental problems was relevant to her claim that she had relied on defendants' representations. On appeal, we did not address the correctness of the trial court's decision to pierce the privilege, because plaintiff did not raise it. *Id.* at 37, 557 *A.*2d 1386. We agreed with plaintiff's contention that the order was too broad because it required disclosure of confidential communications made after plaintiff had signed the contract of sale. We ruled that plaintiff's knowledge acquired after she had contracted to buy the property was not relevant, and we reversed and remanded for entry of a modified order. *Id.* at 37–38, 557 *A.*2d 1386. In doing so, we noted that we were not dealing with "an ordinary discovery motion," *id.* at 38, 557 *A.*2d 1386, and that a *Kozlov* application "requires a greater showing than that the invasion will possibly produce admissible evidence." *Ibid.*

*United Jersey Bank v. Wolosoff, supra,* was an action by a creditor bank to set aside a settlement of defendant's indebtedness on the ground that defendant fraudulently had misrepresented his assets. Unlike the present case, but similar to *Weingarten,* the bank released some privileged documents relevant to its reliance on the alleged misrepresentations, but resisted disclosure of others. Additionally, the case involved communications by bank officers with the bank's in-house counsel who had negotiated the settlement. We noted that since plaintiff had placed at issue its alleged reliance on defendant's misrepresentation, the information

house counsel had when he negotiated the settlement was discoverable.

In the present case, fraud and its requisite reliance on an alleged misrepresentation is not an issue, but we do not imply that an allegation of fraud automatically would justify piercing the privilege.

As previously indicated, the trial court also ordered defendants to waive the privilege and provide discovery "regarding any communications about the purchase of the Union Township property." We risk redundancy by emphasizing that a motion to compel waiver of the privilege is more than a discovery application. We further emphasize that a literal application of the *Kozlov* test is inappropriate without an appreciation that only compelling, that is "grave," circumstances, will justify piercing the privilege. *Nackson, supra,* 114 *N.J.* at 532, 555 *A.*2d 1101.

The Union Township purchase, though possibly relevant regarding defendants' credibility and motive, is not central to this litigation. Moreover, the record contains information sufficient to establish its probative value for those limited purposes. Defendants purchase of an alternative property in Union Township hardly presents "circumstances so grave" *ibid.* as to justify a breach of attorney-client confidentiality.

The order requiring defendants to waive the privilege is reversed and the case is remanded for further proceedings.