> **NOT FOR PUBLICATION WITHOUT THE**
> **APPROVAL OF THE APPELLATE DIVISION**
>
> This opinion shall not "constitute precedent or be binding upon any court."
> Although it is posted on the internet, this opinion is only binding on the
> parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1904-14T2

ALISA FORMAN,

    Plaintiff-Respondent,

v.

MARK FORMAN,

    Defendant-Appellant.

_____

Argued September 14, 2016 — Decided July 24, 2017

Before Judges Espinosa and Suter.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0785-11.

Edward P. Fradkin argued the cause for appellant.

Sylvia S. Costantino argued the cause for respondent (Law Offices of Sylvia S. Costantino, attorneys; Ms. Costantino and William G. Blum, on the brief).

PER CURIAM

    The parties entered into a marital settlement agreement (MSA) that provided for limited duration alimony and included waivers of the right to seek modification or termination but did not state

what consequence, if any, the wife's remarriage would have on the husband's alimony obligation. Defendant Mark Forman appeals from an order that, in part, denied his cross-motion to terminate alimony. For the reasons that follow, we reverse.

I.

An amended Dual Final Judgment of Divorce was entered on June 8, 2012, which incorporated the MSA of the parties. Paragraph 4.1 of the MSA provided, "Husband shall pay limited duration alimony in the amount of $120,000.00 per year for a period of five (5) years payable at the rate of ten thousand dollars ($10,000.00) per month."

Plaintiff remarried on August 12, 2013. Defendant admits he ceased making alimony payments to her in February 2014, after learning of her remarriage.[1]

In September 2014, plaintiff filed a motion that sought, inter alia, to enforce the alimony obligation set forth in Paragraph 4.1 of the MSA. Defendant filed a cross-motion that sought to terminate his alimony obligation effective the date of plaintiff's remarriage and other relief, including compelling plaintiff to produce a copy of her marriage certificate.

---

[1] Defendant asserts that plaintiff concealed her remarriage from him and from their children, who resided with plaintiff. Plaintiff did not respond to this allegation in her corresponding certification but did acknowledge she was remarried on August 12, 2013.

Plaintiff contended defendant's alimony obligation was unaffected by her remarriage and that, pursuant to the terms of the MSA, his obligation only terminated upon death or the expiration of the limited duration alimony term.

Paragraph 4.2 of the MSA describes the alimony obligation as "non-modifiable, non-reviewable and non-terminable for a period of five (5) years," and states further:

> Husband's alimony obligation is non-modifiable under any circumstance and Wife's entitlement thereto shall be guaranteed for the entirety of the five (5) year term of alimony. Similarly, New Jersey case law regarding cohabitation is inapplicable and Wife is free to cohabit. Based upon the foregoing, cohabitation is expressly permitted and shall not cause a review, modification, or termination of alimony.

In Paragraph 4.3, defendant expressly waived the right to seek application or modification in the event plaintiff cohabited "as defined by prevailing New Jersey law." Paragraph 4.4 states,

> Subject to the foregoing, the Husband's obligation to pay alimony to the Wife shall only cease upon the death of either Party or the expiration of the term set forth in Paragraph [4.1[2]].

Paragraph 4.6 of the MSA also included a mutual waiver of the right to modify alimony during the limited duration term and

---

[2] It is agreed that Paragraph 3.1 is erroneously referenced in Paragraphs 4.4 and 4.6 and that the correct reference is to Paragraph 4.1.

an identification of possible changes in circumstances anticipated by the parties:

> Husband agrees and stipulates that he shall not apply for, nor be entitled to, a reduction or elimination of his alimony obligation during the entire five (5) year term of same. Similarly, wife agrees and stipulates that she shall not apply for, nor be entitled to an increase in the amount of alimony as set forth herein during said period. Both parties knowingly and voluntarily make this concession with the following circumstances in mind:
>
>> a. one or both parties [sic] incomes may increase;
>>
>> b. one or both parties [sic] incomes may decrease;
>>
>> c. one or both parties may cohabitate with a non-married individual of the opposite sex;
>>
>> d. one or both parties may have children with another individual in the future;
>>
>> e. one or both parties may retire.
>
> Both parties acknowledge that they have been advised of the following cases and their progeny: Lepis v. Lepis, 83 N.J. 139 (1980), Gayet v. Gayet, 92 N.J. 149 (1982), Garlinger v. Garlinger, 137 N.J. Super. [56] (App. Div. 1975) and Konzelman v. Konzelman, 158 N.J. 185 (1999). Despite having been advised of same, parties hereby agree to be bound by the terms of this provisions as set forth above and affirm it is with full understanding that they make this permanent waiver of a modification of the alimony obligation herein. As such, the alimony obligation set forth in paragraph [4.1] herein shall remain and continue for at

4

least a period of six (6) [sic] years in accordance with paragraph [4.1] above.

Notably, there is no reference anywhere in the MSA to the consequence, if any, of plaintiff's remarriage. Defendant argued that Paragraph 4.6(c) identified specific anticipated circumstances and did not identify these as examples of circumstances that were waived as would be the case if the Paragraph contained the phrase, "including but not limited to." He argued that because the Paragraph does not include any reference to remarriage, the parties did not agree to a waiver of the right to seek modification or termination in the event of plaintiff's remarriage. Plaintiff countered that the Paragraph should be read within the context of the entire Article on alimony, which provides for only two circumstances for the termination of alimony: death or the expiration of the alimony period.

The trial judge rejected defendant's interpretation of the MSA and his request for a plenary hearing. The resulting order provided, in pertinent part:

> 1. The Plaintiff's motion to enforce the MSA, is GRANTED in part. The MSA does not provide for the limited duration alimony to terminate as a result of the Plaintiff's remarriage.
>
> 2. Within thirty (30) days of this order, Defendant shall make current all spousal support payments. If Defendant fails to furnish payment within that time frame, the court will impose a sanction of $100 per day

5

pursuant to its sanction power under R. 1:10-3, and further issue a bench warrant upon written request by Plaintiff and notice to Defendant.

3.   The Plaintiff's motion to compel the Defendant to pay his child support and arrears is GRANTED.   Within thirty (30) days, the Defendant will bring current all child support arrears.

4.   If Defendant fails to pay, then a judgment shall be entered in favor of Plaintiff, Alisa Forman, in the amount of the alimony arrears, against Defendant, Mark Forman.   Plaintiff may record this Judgment as a statewide lien and pursue all remedies available thereafter as a judgment creditor.

5.   Hereafter, Probation will issue a bench warrant upon two missed payments by the Defendant.

6.   The Defendant's cross-motion to terminate his alimony obligation is DENIED. As set forth previously, the court finds that the parties' MSA creates a non-modifiable obligation for the Defendant to follow through on his obligations for the limited duration of the support.

7.   The Defendant's request for reimbursement of alimony from the date of the Plaintiff's remarriage is DENIED.

    . . . .

15.   The Plaintiff's motion for counsel fees is GRANTED.   In review of [her counsel's] certification, the court finds that a counsel fee award of $6580 is appropriate in this case.

16.   The Defendant shall pay Plaintiff's counsel $6580 within sixty (60) days.

A-1904-14T2

In his appeal, defendant asks that we vacate the November 2014 order, specifically asking that we: terminate his alimony obligation effective the date of plaintiff's remarriage; order the reimbursement of all alimony payments made thereafter; vacate the counsel fee award; reverse the sanctions and bench warrant provision; and vacate any judgments entered by the court against him for either alimony arrears or counsel fees. He argues he is entitled to this relief because the trial judge erred in failing to terminate his alimony obligation pursuant to Paragraph 4.6(c) of the MSA and N.J.S.A. 2A:34-25; in compelling the payment of sanctions, issuing a bench warrant and granting a judgment without a plenary hearing or an ability-to-pay hearing; and in assessing counsel fees against him as opposed to in his favor.

II.

Because this appeal concerns the interpretation of a contract, the MSA, our review is de novo and the trial court's interpretation is entitled to no special deference. Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011).

In construing a contract, we "determine the intention of the parties as disclosed by the language used, taken as an entirety." Dontzin v. Myer, 301 N.J. Super. 501, 507 (App. Div. 1997) (citation omitted). Parsing the parties' intent from the MSA is

7

difficult because neither interpretation proffered by the parties is patently unreasonable.

"Extrinsic evidence is admissible as an aid to understand the significance of the contract language, but not to give effect to an intent at variance with that language." Ibid. Interpretative devices used to discover the parties' intent "include consideration of the particular contractual provision, an overview of all the terms, the circumstances leading up to the formation of the contract, custom, usage, and the interpretation placed on the disputed provision by the parties' conduct." Jacobs v. Great Pac. Century Corp., 104 N.J. 580, 582 (1986) (quoting Kearny PBA Local #21 v. Town of Kearny, 81 N.J. 208, 221 (1979)).

In Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C. v. Lowenstein Sandler, P.C., we noted two principles that seem quite relevant to the interpretation of the MSA here:

> The first interpretative principle, as famously expressed by Judge Learned Hand, is that "[t]here is no surer way to misread any document than to read it literally . . . ." The second interpretive principle is that "[p]arties in New Jersey are . . . presumed to have contracted with reference to the existing law."
>
> [365 N.J. Super. 241, 248 (App. Div. 2003) (alterations in original) (citations omitted).]

"The obligations of a contract long have been regarded as including not only the express terms but also the contemporaneous

8                                                              A-1904-14T2

state law pertaining to interpretation and enforcement." Chase Manhattan Mortg. Corp. v. Heritage Square Ass'n, 325 N.J. Super. 42, 51 (Ch. Div. 1998) (quoting U.S. Tr. Co. v. New Jersey, 431 U.S. 1, 19 n.17, 97 S. Ct. 1505, 1516 n.17, 52 L. Ed. 2d 92, 108 n.17 (1977)), aff'd o.b., 325 N.J. Super. 1 (1999). The United States Supreme Court "has said that 'the laws which subsist at the time and place of the making of a contract . . . enter into and form a part of it, as if they were expressly referred to or incorporated in its terms.'" Ibid. (quoting U.S. Tr. Co., supra, 431 U.S. at 19 n.17, 97 S. Ct. at 1516 n.17, 52 L. Ed. 2d at 108 n.17). It is thus presumed "that contracting parties adopt the terms of their bargain in reliance on the law in effect at the time the agreement is reached." Ibid. (quoting U.S. Tr. Co., supra, 431 U.S. at 19 n.17, 97 S. Ct. at 1516 n.17, 52 L. Ed. 2d at 108 n.17).

Prior to 1999, courts were authorized pursuant to N.J.S.A. 2A:34-25 to award two forms of alimony: permanent and rehabilitative. The statute also called for the automatic termination of "permanent alimony" upon remarriage. Our Supreme Court described the public policy underlying that provision:

> In enacting that basis or condition for discontinuing alimony, the Legislature articulated a public policy that the legal obligation of the supporting spouse is superseded and ends on the remarriage of the dependent spouse. In effect, the new marriage

bond itself creates a change of circumstances that the Legislature deemed sufficiently fundamental and important to require the automatic termination of alimony. The legal obligation of post-divorce alimony is derived from the antecedent marriage; a new marriage supplants that obligation. Hence, remarriage justifies the termination of alimony without regard to the economic circumstances of the dependent spouse who has remarried.

[Konzelman v. Konzelman, 158 N.J. 185, 195 (1999) (citation omitted).]

The statute was amended in 1999 to "authorize[] the court to award two additional types of alimony: (1) limited duration, which would be awarded where economic assistance is necessary for a limited time; and (2) reimbursement alimony, which will be awarded to compensate the spouse who supported the other spouse while he or she obtained an advanced education." Press Release, Office of the Governor (Sept. 13, 1999) (press release on Governor Christie Whitman's signing of S. 54, 208th Leg., 1998 Sess. (N.J. 1999), the bill amending N.J.S.A. 2A:34-25). The Governor's press release further noted that, under the amended statute,

[l]imited duration alimony, like permanent alimony under previous law, will terminate upon the remarriage of the receiving spouse. Reimbursement alimony, like rehabilitative alimony under previous law, will not terminate upon remarriage.

[Ibid.]

At the time the parties entered into the MSA, N.J.S.A. 2A:34-25 stated that "permanent and limited duration shall terminate as

of the date of remarriage." As was the case regarding permanent alimony prior to the amendment, this represented "a public policy" articulated by the Legislature "that the legal obligation of the supporting spouse [to pay limited duration alimony] is superseded and ends on the remarriage of the dependent spouse." Konzelman, supra, 158 N.J. at 195. The effect of the amendment was, then, to make the termination of limited duration alimony automatic upon remarriage of the receiving spouse.

This legislative intent is further evinced in the statute's requirement that "[a] former spouse . . . who remarries . . . shall promptly so inform the spouse . . . paying . . . limited duration alimony." N.J.S.A. 2A:34-25. The statute also authorizes the court to require an alimony recipient who fails to give such notice "to pay any reasonable attorney fees and court costs incurred by the recipient's former spouse or partner as a result of such non-compliance." Ibid.

The parties agreed to the terms of the MSA in 2012 and unequivocally described the alimony as "limited duration alimony." Because this was a matter of the parties' agreement rather than an award by the court, we do not ascribe to them the Legislature's characterization of the purpose of limited duration alimony — that it applies to situations where economic assistance is necessary for a limited time. But we do charge them with knowledge of the

11

statutory provisions applicable to the term they chose to use to characterize the alimony obligation.  See Ravin, supra, 365 N.J. Super. at 248.

Certainly, the parties could have agreed that the automatic termination provision of N.J.S.A. 2A:34-25 would not apply to the alimony obligation in the MSA.  Although other potential occurrences were identified and addressed, plaintiff's possible remarriage was not among them.  The statutory automatic termination provision was neither acknowledged nor waived.  Moreover, the certifications they submitted in support of their motion and cross-motion make no reference to this statutory provision.

We are thus left with: (1) a statutory automatic termination provision that the parties are presumed to have had knowledge of when they entered the MSA, and (2) conflicting certifications regarding their intent as to whether plaintiff's remarriage would terminate the limited duration alimony.  We conclude that a material factual dispute exists as to the parties' intent on this issue and that a plenary hearing is required.  See Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006) ("Disputes of material fact should not be resolved on the basis of certifications nor in reliance upon ambiguous terms in a property settlement agreement."); Harrington v. Harrington, 281 N.J. Super. 39, 47 (App. Div.) "[T]rial judges cannot resolve material factual

disputes upon conflicting affidavits and certifications."), <u>certif. denied</u>, 142 <u>N.J.</u> 455 (1995).

Therefore, we reverse and remand to the trial court to conduct a plenary hearing within sixty days to determine what the parties' intent was regarding the limited duration alimony provision in the MSA and what their intent was regarding the application of the automatic termination provision of <u>N.J.S.A.</u> 2A:34-25. In the event the trial judge should find that the limited duration alimony ended with plaintiff's remarriage, the plenary hearing should also address defendant's claim for reimbursement. Pursuant to <u>N.J.S.A.</u> 2A:34-25, "any arrearages that have accrued prior to the date of remarriage . . . shall not be vacated or annulled." Therefore, any reimbursement would be limited to payments for obligations that otherwise would have become due after her remarriage. Additional issues that may be addressed on remand include the award of counsel fees to plaintiff and the denial of counsel fees to defendant. Defendant's obligation to pay his child support obligation is unaffected.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1904-14T2